IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JENNIFER L. ELLIS | : |
| Plaintiff | : No. 1:09-CV-1976 |
| | : |
| v. | : (JUDGE CONNER) |
| | : (MAGISTRATE JUDGE PRINCE) |
| JOHN M. MCHUGH, Secretary of the | : |
| Army, | : |
| Defendant | : |

## REPORT AND RECOMMENDATION

### I. Procedural Background

Pursuant to an Order entered on March 4, 2011 (Doc. 35), the Honorable

Christopher C. Conner referred the Defendant's pending motion for summary

judgment to the undersigned for the purpose of preparing a Report and

Recommendation.

Plaintiff, Jennifer L. Ellis, initiated this action on October 13, 2009 (Doc. 1)

pursuant to the Rehabilitation Act of 1973 ("RA"), 29 U.S.C. § 701.   The

complaint asserts disability discrimination, including disparate treatment and a

failure to accommodate, as well as a hostile work environment claim.  Named as

Defendant is John M. McHugh, Secretary of the Army.[1]

---

[1]  Plaintiff originally named Robert Gates, Secretary of Defense, as the
Defendant in this case.  By Order dated May 11, 2010, the court granted the
stipulation of the parties to substitute Mr. McHugh for Mr. Gates as the proper

On November 24, 2010, Defendant filed a motion for summary judgment (Doc. 24) and a statement of material facts (Doc. 26). A supporting brief was filed on December 2, 2010 (Doc. 27). Plaintiff filed a brief in opposition to the motion (Doc. 30) and a response to the statement of material facts (Doc. 31) on December 14, 2010, to which Defendant filed a reply on December 28, 2010 (Doc. 32). The matter is now ripe for disposition. For the reasons that follow, it will be recommended that the Defendant's motion for summary judgment be granted.

## II. Factual Background

In 2008, Plaintiff, Jennifer Ellis, was a student at Wilson College. She enrolled in a student trainee program, the Student Temporary Employment Program ("STEP"), at Letterkenny Army Depot. While the program is temporary, students who successfully complete the program may be eligible for non-competitive conversion to other programs at Letterkenny. In the spring of 2008, Plaintiff was selected to be a student trainee for production controller at Letterkenny. During in-processing, Plaintiff executed Form 256, Self-Identification of Handicap, indicating that she has a mild, 2% case of cerebral palsy. This caused her to walk with a slight limp. She also referenced visual and orthopedic impairments. She requested an appointment at the dispensary so that

---

Defendant to this action and to amend the caption accordingly. (*See* Doc. 15).

she could be fitted for shoes.[2]

During the summer, Plaintiff was assigned to work with Lonie Bender, Cindy Stoner, Barb Dunlap and Sylvia Smith, who was her supervisor.  On August 6, 2008, Plaintiff met with Smith, who informed her that she would be terminated effective August 16, 2008.  Smith maintained that Plaintiff, while a hard worker, did not possess the skills for the production controller position.  Plaintiff sent a letter thanking Smith and stating that she enjoyed her time at Letterkenny.  The present action followed.

## III. Standard of Review

Federal Rule of Civil Procedure 56(c) requires the court to render summary judgment " . . . forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed.R.Civ.P. 56(c).  "[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the

---

[2]  Although an appointment was scheduled, Plaintiff was informed that the physician's note on which she was relying for orthopedic shoes was outdated and that she would need a more recent one.  Plaintiff thereafter elected to be fitted by a private retailer.  However, Plaintiff was provided forms to submit for reimbursement of these shoes.

requirement is that there be no <u>genuine</u> issue of <u>material</u> fact." <u>Anderson v.</u>

<u>Liberty Lobby, Inc.</u>, 477 U.S. 242, 247-48 (1986) (emphasis in original).

A disputed fact is "material" if proof of its existence or nonexistence would

affect the outcome of the case under applicable substantive law. <u>Anderson</u>, 477

U.S. at 248; <u>Gray v. York Newspapers, Inc.</u>, 957 F.2d 1070, 1078 (3d Cir. 1992).

An issue of material fact is "genuine" if the evidence is such that a reasonable jury

could return a verdict for the nonmoving party. <u>Anderson</u>, 477 U.S. at 257;

<u>Brenner v. Local 514, United Brotherhood of Carpenters and Joiners of America</u>,

927 F.2d 1283, 1287-88 (3d Cir. 1991).

When determining whether there is a genuine issue of material fact, the

court must view the facts and all reasonable inferences in favor of the nonmoving

party. <u>Moore v. Tartler</u>, 986 F.2d 682 (3d Cir. 1993); <u>Clement v. Consolidated</u>

<u>Rail Corporation</u>, 963 F.2d 599, 600 (3d Cir. 1992); <u>White v. Westinghouse</u>

<u>Electric Company</u>, 862 F.2d 56, 59 (3d Cir. 1988). In order to avoid summary

judgment, however, the nonmoving party may not rest on the unsubstantiated

allegations of his or her pleadings. When the party seeking summary judgment

satisfies its burden under Rule 56(c) of identifying evidence which demonstrates

the absence of a genuine issue of material fact, the nonmoving party is required by

Rule 56(e) to go beyond the pleadings with affidavits, depositions, answers to

interrogatories or the like in order to demonstrate specific material facts which give rise to a genuine issue.  Celotex Corporation v. Catrett, 477 U.S. 317, 324 (1986).  The party opposing the motion "must do more than simply show that there is some metaphysical doubt as to the material facts."  Matsushita Electric Industrial Co. v. Zenith Radio, 475 U.S. 574, 586 (1986).  When Rule 56(e) shifts the burden of production to the nonmoving party, that party must produce evidence to show the existence of every element essential to its case which it bears the burden of proving at trial, for "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  Celotex, 477 U.S. at 323.  *See* Harter v. G.A.F. Corp., 967 F.2d 846, 851 (3d Cir. 1992).

## IV. Discussion

### A.  *Disability Discrimination*

"The Rehabilitation Act expressly makes the standards set forth in the 1990 Americans with Disabilities Act ... applicable to federal employers[.]" Wishkin v. Potter, 476 F.3d 180, 184 (3d Cir.2007). The Rehabilitation Act ("RA") is the exclusive means for challenging disability-related discrimination in the federal workplace.  Spence v. Straw, 54 F.3d 196, 202-03 (3d Cir.1995).  In the absence of direct evidence, cases such as Plaintiff's are examined under the evidentiary

5

framework first set forth by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Under the McDonnell Douglas analysis, a plaintiff must show, by a preponderance of the evidence, a prima facie case of discrimination. McDonnell Douglas, 411 U.S. at 802. If the employee is able to do this, the burden shifts to the employer to articulate some legitimate, nondiscriminatory reason for its actions against the employee. Id. If the employer can meet this burden, then the burden shifts back to the employee to prove, by a preponderance of the evidence, that the reasons articulated by the defendant were actually a pretext for discriminatory practices. Id. at 804. Summary judgment is appropriate on behalf of the employer if the employee fails to meet her burden at either the prima facie or pretext stage of the framework.

*1. Disability as Defined by RA*

Defendant contends that Plaintiff's claim must fail because she cannot establish a prima facie case of disability discrimination. To establish a prima facie case under the Rehabilitation Act, a plaintiff must demonstrate that, at the time of the alleged discriminatory actions, 1) she had a disability; 2) she was otherwise qualified to perform the essential functions of the position, with or without accommodation; and, 3) she was victim of an adverse employment action because of her disability. Shiring v. Runyon, 90 F.3d 827, 831 (3d Cir.1996). At the time

of her discharge, the ADA defined the term "disability" as follows:

> (2) DISABILITY.-The term "disability" means, with respect to an individual-
>
> > (A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual;
> >
> > (B) a record of such an impairment; or
> >
> > (C) being regarded as having such an impairment.

Pub. L. No. 101-336, § 3; 104 Stat. 327, 329-30 (1990) (previously codified at 42 U.S.C. § 12102(2)).[3]  A physical or mental impairment is defined as:

---

[3]  Congress amended the ADA and the Rehabilitation Act in order to broaden the category of individuals entitled to statutory protection from disability discrimination. Pub. L. No. 110-325, 122 Stat. 3553 (2008). The amendments took effect on January 1, 2009. Pub. L. No. 110-325, § 8, 122 Stat. 3553, 3559 (2008). This legislation displaced the standards enunciated by the Supreme Court in Toyota Motor Manufacturing, Kentucky, Inc. v. Williams, 534 U.S. 184 (2002), and Sutton v. United Air Lines, Inc., 527 U.S. 471 (1999). *See* Ragusa v. Malverne Union Free Sch. Dist., 582 F. Supp. 2d 326, 341-42 nn. 4-5 (E.D.N.Y.2008).  Because the ADA Amendments Act contains no language indicating that it applies retroactively, courts have construed its provisions to be prospective. Becerril v. Pima County Assessor's Office, 587 F.3d 1162, 1164 (9th Cir. 2009); Milholland v. Sumner County Bd. of Educ., 569 F.3d 562, 565 (6th Cir. 2009). Inasmuch as Plaintiff was discharged prior to January 1, 2009, her Rehabilitation Act claim is governed by the more restrictive standard of disability applicable under Toyota Motor Manufacturing and Sutton.

> (A) any physiological disorder or condition, cosmetic disfigurement, or anatomical loss affecting one or more of the following body systems: neurological; musculoskeletal; special sense organs; respiratory, including speech organs; cardiovascular; reproductive, digestive, genito-urinary; hemic and lymphatic; skin; and endocrine; or (B) any mental or psychological disorder, such as mental retardation, organic brain syndrome, emotional or mental illness, and specific learning disabilities.

34 C.F.R. § 104.3(j)(2)(I) (2007). Merely having an impairment, however, does make a person disabled within the meaning of the ADA and Rehabilitation Act. *See* Toyota Motor Mfg. Ky., Inc. v. Williams, 534 U.S. 184, 195 (2002). A plaintiff must also show that her impairment meets one of the three definitions of disability. Therefore, assuming, for purposes of this motion, that Plaintiff's conditions are physical or mental impairments as defined by the Rehabilitation Act, she must demonstrate that these conditions are also disabling.

### a. Substantially Limited

To satisfy the first definition of disability, the Plaintiff must identify the life activity that is limited by her impairment and prove that the limitation is substantial. Fiscus v. Wal-Mart Stores, Inc., 385 F.3d 378, 382 (3d Cir.2004) (citing Bragdon v. Abbott, 524 U.S. 624, 631 (1998)). Major life activities are "those activities that are of central importance to daily life." Toyota, 534 U.S. at 197 (citing 42 U.S.C. § 12102(2)(A) (1994)). Such activities include caring for

oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing

learning, sitting, standing, lifting and reaching. Kania v. Potter, 358 F. App'x 338

342 (citing 29 C.F.R. § 1630.2(I) and Kralik v. Durbin, 130 F.3d 76, 78-79 (3d

Cir.1997)).  Moreover, the term substantially limits means:

> (I)     Unable to perform a major life activity that the average person in the
>         general population can perform; or
>
> (ii)    Significantly restricted as to the condition, manner or duration under
>         which an individual can perform a particular major life activity as
>         compared to the condition, manner, or duration under which the
>         average person in the general population can perform that same major
>         life activity.

29 C.F.R. § 1630.2(j)(1) (2007).

The term "substantial" in the phrase "substantially limits" "clearly precludes

impairments that interfere in only a minor way with the performance of [a major

life activity] from qualifying as disabilities." Toyota, 534 U.S. at 197. "Only

extremely limiting disabilities, either in the short term or the long term, qualify for

protected status." Robinson v. Lockheed Martin Corp., 212 F. App'x. 121, 2007

WL 38345, *2 (3d Cir., Jan.8, 2007) (citing Marinelli v. City of Erie, 216 F.3d

354, 362 (3d Cir. 2000)).  The United States Supreme Court stated that "major life

activities" and "substantial limitation" must be "interpreted strictly to create a

demanding standard for qualifying as disabled." Toyota, 534 U.S. at 197.  When

considering whether an impairment substantially limits a major life activity, courts consider the nature, severity, duration, and the permanent or long-term impact of the impairment. Mondzelewski v. Pathmark Stores, Inc., 162 F.3d 778, 783 (3d Cir. 1998) (citing 29 C.F.R. § 1630.2(j)(2) (i)-(iii)).

Although "[t]he question of whether an individual is substantially limited in a major life activity is a question of fact[,]" a plaintiff may not merely submit evidence of a medical diagnosis or impairment. Williams v. Philadelphia Housing Authority Police Dept., 380 F.3d 751, 763 (3d Cir. 2004). Rather, he or she must "prove a disability by offering evidence [of] the extent of the limitation [caused by their impairment] in terms of their own experience[.]" Toyota at 198 (citation omitted); *see also* Weisberg v. Riverside Tp. Bd. of Educ., 180 F. App'x. 357, 361 (3d Cir. 2006); Yunckes v. Chertoff, Docket No. 05-5766, 2008 WL 577229, *3 (D.N.J. Feb.29, 2008) (quoting Toyota, 534 U.S. at 198). Thus, a plaintiff seeking statutory protection for "a physical or mental impairment that substantially limits one or more of the major life activities," 42 U.S.C. § 12102(2)(A), must provide sufficient evidence to "(1) show that she has an impairment; (2) identify the life activity that she claims is limited by the impairment; and (3) prove that the limitation is substantial." Fiscus, 385 F.3d at 382 (citation omitted).

*i. Walking*

Plaintiff first contends that she is substantially limited in the major life activity of walking.  Defendant argues, however, that any limitation in her ability to walk is mild and insubstantial inasmuch as she is able to walk up to one-third of a mile between buildings without difficulty, she is able to climb stairs and she has only a slight limp.  In support of its position, Defendant cites <u>Kelly v. Drexel University</u>, 94 F.3d 102 (3d Cir.1996), wherein the Third Circuit Court of Appeals held that a man who had a noticeable limp due to a hip injury, could not walk more than a mile without stopping, and had to climb stairs slowly was not "disabled" as such restrictions on his ability were found to be "comparatively moderate." <u>Id.</u> at 103-106.

Plaintiff, in response, cites <u>Brady v. Wal-Mart Stores, Inc.</u>, 531 F.3d 127, 134 (2d Cir. 2008) as being more analogous to the facts of the present case.  In <u>Brady</u>, the plaintiff, like Ms. Ellis, had cerebral palsy.  The plaintiff was described as being "noticeably slower walking, walking with a shuffle and limp, recognizably slower and quieter speech, not looking directly at people" and that his cerebral palsy "affect[ed] ... his driving, the school work, his working ability, his eating, his walking, his seeing." <u>Id.</u> at 130.  The court concluded that he was able to meet the statutory definition of "disabled" by being in fact so and/or so

11

perceived by his employer.

The Brady case is, however, distinguishable from the facts of the present action. While both the this Plaintiff and the Brady plaintiff share a common diagnosis of cerebral palsy, clearly Ms. Ellis' has far less impact on her life. Moreover, as noted above, it is not the diagnosis that drives the disability determination but rather the effects of the impairment on major activities of daily life of the person asserting the impairment. Williams, *supra* at 763. It is quite possible for the same condition to render some individuals disabled while others are not disabled by it, due to the varying effects one condition may have. Consequently, it is not the identical diagnosis of Brady, but the comparable limitations discussed in the Kelly decision, which the court notes is one issued by this Circuit, that makes the latter more on point with the facts of this case.

As noted above, given Plaintiff's ability to walk approximately one-third of a mile between buildings and to climb steps, coupled with the fact that she declined a handicap parking permit that would have allowed her to park closer to work and thus reduce her walking, and the fact her slight limp is the only effect her cerebral palsy has on her ability to walk, her impairment is less severe than the plaintiff in Kelly, which the Court of Appeals found to not substantially limit the major life activity of walking. Consequently, she has not established that she is

disabled by demonstrating that she is substantially limited in her ability to walk.

### ii. Vision

Plaintiff also assert that she is substantially limited in her vision, requiring corrective eyewear. In making such a determination as to whether an impairment substantially limits a major life activity, "a court must look at [a] plaintiff's impairments after corrective measures are taken – e.g., medication, eyeglasses." Marinelli, 216 F.3d at 362 n. 4 (citing Albertson's, Inc. v. Kirkingburg, 527 U.S. 555 (1999); Sutton v. United Air Lines, Inc., 527 U.S. 471 (1999)). A person whose impairment is corrected by mitigating measures does not have an impairment that substantially limits a major life activity and is not disabled within the meaning of the ADA. *See* Sutton, 527 U.S. at 481-83.

Similar to plaintiffs in Sutton, Plaintiff's visual impairment can be corrected to a reasonable visual acuity level through her use of progressive-style bifocals. *See* Phillips v. Wal-Mart Stores, Inc., 78 F. Supp. 2d 1274, 1284 (S.D. Ala.1999), *aff'd*, 220 F.3d 593 (11th Cir.2000) (TABLE) (noting that courts have routinely held that "a 'visual impairment which hinders, or makes it more difficult for an individual to function at a full visual capacity, does not amount to a substantial limitation on one's ability to see where the evidence suggests the individual can otherwise conduct activities requiring visual acuity.'") (citations omitted). Under

13

this standard, courts have held that claims of nearsightedness, blindness in one eye, glaucoma, double and sometimes triple vision, night blindness, dry and painful eyes, and blurred vision do not amount to a disability under the ADA. *See* Cline v. Fort Howard Corp., 963 F. Supp. 1075, 1079-80 (E.D. Okla. 1997); Rivera v. Apple Industrial Corp., 148 F. Supp. 2d 202, 213-14 (E.D.N.Y.2001); Mondaine v. American Drug Stores, Inc., 408 F. Supp.2d 1169, 1200 (D. Kan. 2006); Overturf v. Penn Ventilator Co., Inc., 929 F. Supp. 895, 898 (E.D. Pa.1996); Bancale v. Cox Lumber Company, Inc., 1998 WL 469863, at *5 (M.D. Fla. May 18, 1998); Person v. Wal-Mart Stores Inc., 65 F. Supp. 2d 361, 364 (E.D.N.C. 1999); Phillips, 78 F. Supp.2d at 1284. Given that Plaintiff admits that her vision improves upon wearing corrective lenses and that her only visual limitation was the need to enlarge to print on a computer screen, she has failed to put forth evidence of substantial limitation caused by her vision. Thus, it cannot be fairly said that Plaintiff suffers from a physical or mental impairment that substantially limits her vision.

### iii. Learning

Plaintiff also argues that she is substantially limited in the major life activity

of learning.[4]  A general cognitive function may constitute a "major life activity" that satisfies the disability standard. *See* <u>Taylor v. Phoenixville</u>, 184 F.3d 296, 307 (3d Cir.1999) (holding "thinking" to be a major life activity); <u>Gagliardo v. Connaught Labs.</u>, 311 F.3d 565, 569 (3d Cir.2002) (holding "concentrating" and "remembering" to be major life activities); *see also* 34 C.F.R. 104.3(j) (defining learning as a major life activity). At the same time, limits on a person's ability to think, remember, or learn must still rise to the "substantially limit[ing]" threshold to qualify a person as disabled. *See, e.g.*, <u>Collins v. Prudential Inv. & Ret. Servs.</u>, No. 03-2356, 2005 WL 19466, at *5 (3d Cir. Jan.4, 2005) (stating that "[h]ealth conditions that cause moderate limitations on major life activities do not constitute disabilities under [federal disability law]").

In addressing this limitation, as well as walking and seeing, Plaintiff asserts merely that "[f]or purposes of summary judgment, Plaintiff has demonstrated that she is substantially limited in those areas."  (Doc. 30, p. 9).  She testified that her cerebral palsy affects her thinking and her concentration.  (Doc. 30, Ex. 14, p. 7). However, she also acknowledges that she has obtained two colleges degrees and maintained a grade point average of 3.0, all while working and raising two

---

[4]  To the extent she claims difficulty in thinking and concentrating, these impairments will be included within this category.

children as a single parent.  These accomplishments belie a disabling condition in

her ability to think and/or learn.  *See* Andreoli v. Gates, 482 F.3d 641, 651-52 (3d

Cir. 2007) (a reasonable jury could not find that plaintiff was disabled, in light of

the undisputed evidence that she was able to get married, finish her bachelors

degree, and attend nursing school after she allegedly became disabled. All of the

activities in which plaintiff  engaged require thinking, concentrating, and

interacting with others); Herzog v. Loyola College in Maryland, Inc., Civil Action

No. RDB-07-02416, 2009 WL 3271246  (D. Md. Oct. 9, 2009) (plaintiff's

academic successes, attaining an undergraduate degree with a double-major and

received above-average grades while obtaining two master's degrees, his ability to

learn is not substantially limited); Collins, supra at 375-76 (affirming grant of

summary judgment reasoning that plaintiff's success at work, her educational

background, and her extensive involvement in civic and professional activities

were inconsistent with substantial limitations in her ability to think); Hopkins v.

St. Joseph's Creative Beginning, No 02-6791, 2003 WL 22795302, * 4 (E.D. Pa.

2003 ("when making an individualized inquiry as mandated by Sutton, we find

that [plaintiff] has engaged in numerous activities which suggest that she has not

been substantially impaired. Most notably, taking college courses and is working

towards earning a college degree; she has an extensive employment history; and

she is a Sunday school teacher at her church. Based on [plaintiff's] ability to engage in these activities, we conclude that her ability to read and learn is not substantially impaired.")

Moreover, although she concedes that she did mark her cerebral palsy on her intake form for Letterkenny, she did not mark the category identifying that she was learning disabled.   (Doc. 30, Ex. 32, p. 44).  Given the lack of evidence demonstrating the manner in which this alleged impairment affects her, she has failed to establish that she is substantially limited in the major life activity of learning.

### iv.  Other limitations

Plaintiff also maintains that her condition affected her ability to sit, stand, lift and bend.  Defendant contends that because Plaintiff did not identify these activities in discovery and raises them for the first time in her opposing brief, they cannot be considered.  It asserts, further, that the record is void of evidence indicating that these activities are substantially limited by her condition.  Indeed, "[i]t is well settled that courts need not consider additional claims that are raised for the first time in briefing."  Treaster v. Conestoga Wood Specialties Corp., Civ. A. No. 4:09-CV-632, 2010 WL 2606481, *3 (M.D. Pa. June 25, 2010).  *See* Aldinger v. Spectrum Control, Inc., 207 F. App'x. 177, 180 n. 1 (3d Cir. 2006)

(district court refused to address the plaintiffs' claim because that issue was raised for the first time in plaintiffs' brief in opposition to the defendant's motion for summary judgment and was not pleaded in their complaint); Melrose, Inc. v. City of Pittsburgh, 2008 WL 4449687, *13 (W.D. Pa. Sept. 30, 2008) ("It is well established that a plaintiff may not attempt to amend a complaint through a brief in opposition to a motion for summary judgment."); Johnson v. Community College of Allegheny County, 566 F. Supp. 2d 405, 449 (W.D. Pa.2008) (it is inappropriate for plaintiff to raise additional interference allegations for the first time in her opposition brief; thus such claims are improperly before the court).

Because she failed to identify these limitations in discovery, the issues of Plaintiff's other limitations need not be addressed. Nonetheless, even if these issues were properly raised, Plaintiff has not established the limiting effects of such impairments. In the investigation of her administrative complaint, Plaintiff testified her cerebral palsy at times affects her standing, sometimes affects her sitting, and also affects her bending, lifting and hand-eye coordination. (Doc. 30, Ex. 14, p. 6-7). She further stated that it very much affects her ability to think and that she has to concentrate harder than others. (Id. at 7). However, she did not identify the impact of these impairments or the manner or degree they limited her. Consequently, she has not established that she was substantially limited in these

activities.

### b. Record of Disability

Plaintiff may also establish that she is "disabled" within the meaning of the statute by demonstrating that she has a record of disability. The purpose of this provision is to protect individuals who are discriminated for past disabilities. Eshelman v. Agere Sys. Inc., 554 F.3d 426, 437 (3d Cir. 2009). To have a record of impairment, plaintiff must either have "a history of" an impairment that substantially limits one or more major life activities or she must have "been misclassified as having" the same. 29 C.F.R. § 1630.2(k). However, to prove a record of a disability, a plaintiff "still must demonstrate that the recorded impairment is a 'disability' within the meaning of the ADA." Tice v. Ctr. Area Transp. Auth., 247 F.3d 506, 513 (3d Cir.2001). Moreover, assuming that the Plaintiff has a "disability," she also must show that the Defendant "relied upon [his or] her record of impairment in making its employment decision." Eshelman, supra (citing Colwell v. Suffolk County Police Dep't, 158 F.3d 635, 645 (2d Cir.1998)).

Here, the record viewed in a light most favorable to the Plaintiff does not support a finding that she has a "record" of a disability because, as noted above, Plaintiff has not shown that her impairment substantially limits or limited a major

life activity, even if she had recovered from it.  She is further unable to demonstrate that her cerebral palsy played a role in the adverse employment action inasmuch as the decision-maker, her supervisor, Sylvia Smith, testified that she was unaware of Plaintiff's condition until after she had been let go from Letterkenny.  (Doc. 25, Ex. U, p. 14:23-25).  Accordingly, the record fails to support a finding that Plaintiff's impairment is a disability under this second prong.

### c.  Regarded as Disabled

Defendant further asserts that Plaintiff cannot establish that the Army regarded Plaintiff as being disabled.  A plaintiff can be "regarded as having an impairment" if she can show that she (1) had an impairment that was not substantially limiting but her employer treated the impairment as such; (2) had an impairment that substantially limited a major life activity due to the attitude of others towards the impairment; or (3) did not have an impairment covered by the statute but her employer treated him as if he had a substantially limiting impairment.  Buskirk v. Apollo Metals, 307 F.3d 160, 166-67 (3d Cir. 2002) (citing 29 C.F.R. § 1630.2(1) (2001)).  In other words, in order to show that she was "regarded as" disabled, the Plaintiff must demonstrate that the Army erroneously believed that she has an impairment that substantially limited one or

more of her major life activities.  <u>Tice</u>, 247 F.3d at 514; <u>Wilson v. MVM, Inc.</u>, 475 F.3d 166, 179 (3d Cir.2007) (to prevail on a claim of this kind, a plaintiff must show that the employer either "mistakenly believed that [the employee has] a physical impairment that substantially limits one or more major life activities" or "mistakenly believed that an actual non-limiting impairment substantially limits one or more major life activities.").  This analysis hinges on "the reactions or perceptions of the [employer and] the persons interacting and working with him" instead of focusing on a plaintiff's actual disabilities or limitations.  <u>Kelly</u>, 94 F.3d at 108-09. Such a perceived impairment can, in reality, be either nonexistent or not substantially limiting. <u>Sutton</u>, 527 U.S. at 489 ("In both cases, it is necessary that a covered entity entertain misperceptions about the individual – it must believe either that one has a substantially limiting impairment that one does not have or that one has a substantially limiting impairment when, in fact, the impairment is not so limiting.").

Plaintiff self-identified as suffering from a mild (2%) case of cerebral palsy on her intake form to Letterkenny.  (*See* [Doc. 30, Ex. 32, p. 44](#)). Additionally, co-workers observed Plaintiff walking with a slight limp.  Further, Lonie Bender, a fellow employee, inquired of Plaintiff's impairment in deciphering whether she would be able to walk the shop floor and whether she needed a disabled parking

permit. In responding to this inquiry, Plaintiff stated that her case was mild and she did not require assistance. Aside from this inquiry, Plaintiff testified that no one inquired about her condition and that she did not inform the human resources office of it.[5] Further, although Plaintiff did not inform her supervisor, Sylvia Smith, of her impairment, she did mention it on her Form 256 upon intake. Plaintiff therefore argues that knowledge of her condition can be imputed to Smith and the Army. Defendant contends, however, that even if Defendant had knowledge of Plaintiff's cerebral palsy, this alone is insufficient to establish that it regarded her as disabled. *See* Kelly, *supra* at 109 (mere fact that an employer is aware of employee's visible walking impairment is insufficient to demonstrate that it regarded plaintiff as disabled or that such a perception caused an adverse employment action); Sever v. Henderson, 381 F. Supp. 2d 405, 416 n. 5 (M.D. Pa.2005) (holding that defendants' mere awareness of an impairment is insufficient to establish that they regarded plaintiff as disabled absent evidence that they believed plaintiff to be substantially limited in a major life activity).

Given her self-identification on her intake form as having a mild case of cerebral palsy, coupled with the direct question on the issue posed by Bender, this

---

[5] She did request an appointment at the dispensary to be fitted for shoes. However, there is no evidence that she informed anyone that this was related to her cerebral palsy.

information can be imputed to the Defendant.  Plaintiff's supervisor, Sylvia Smith,

testified, however, that she was unaware of Plaintiff's diagnosis until after she had

been terminated from the program.  (Doc. 25, Ex. U, p. 14:23-25).  Nonetheless,

the central issue presented is not whether Defendant knew of her cerebral palsy

but whether it considered her disabled, regardless of whether the inference was

correct or mistaken.  As explained in <u>Kelly</u>:

> In support of [his claim that he was regarded as disabled], Kelly
> alleges only that his limp was "visible and apparent," [] and that [his
> supervisor] was aware of his problem[.] The district court properly
> rejected this argument. [His supervisor] testified at his deposition that
> he did not consider Kelly's impairment disabling.

<u>Kelly</u> at 109 (citations omitted).  Plaintiff's slight limp was the only visible

manifestation of her cerebral palsy of which Defendant was aware.  Plaintiff has

presented no other evidence from which an inference could be drawn that

Defendant considered her disabled.  When coupled with the facts that she did not

mention any alleged impairments to anyone, that she denied she needed assistance

to perform her duties, that she stated that her cerebral palsy was a mild case and

that she was able to walk some distances between buildings and use the stairs,

Plaintiff is unable to establish that Defendant regarded her as disabled.  Rather,

she has not presented sufficient evidence to suggest that Defendant's knowledge

of her slight limp was anything more than a moderate restriction of her ability to

walk. *See* id. This is insufficient to establish that it regarded her as disabled.

Consequently, she is unable to demonstrate this definition of "disabled" in

establishing a prima facie case of disability discrimination under the

Rehabilitation Act.

Having concluded that Plaintiff is not considered "disabled" within the

meaning of the Rehabilitation Act, further analysis as to whether she can establish

the other elements of a prima facie case of disability discrimination, *to wit.*, that

she is otherwise qualified to perform the essential elements of the job, with or

without a reasonable accommodation, and that she was terminated from her

position, is unnecessary.

   *2. Failure to Accommodate*

Defendant next argues that Plaintiff has not established a cause of action

against it for failure to accommodate her disability. Reasonable accommodations

include "measures such as 'job restructuring, part-time or modified work

schedules ... acquisition or modification of equipment or devices ... and other

similar accommodations for individuals with disabilities.'" Freeman v. Chertoff,

604 F. Supp.2d 726, 734 (D.N.J.2009) (citing 42 U.S.C. § 12111(9)(B)). When

making an accommodation claim, "[a]n employee can succeed under the

Rehabilitation Act only if the employee can demonstrate that a specific, reasonable

accommodation would have allowed her to perform the essential functions of her job." Donahue v. Consol. Rail Corp., 224 F.3d 226, 232 (3d Cir.2000) (internal citations and quotations omitted). If the plaintiff makes this showing, the burden shifts to the defendant to prove that the requested accommodations "are unreasonable, or would cause an undue hardship on the employer." Turner v. Hershey Chocolate U.S.A., 440 F.3d 604, 614 (3d Cir.2006). Additionally, "[a]n employee can demonstrate that an employer breached its duty to provide reasonable accommodations because it failed to engage in good faith in the interactive process by showing that: (1) the employer knew about the employee's disability; (2) the employee requested accommodations or assistance for his or her disability; (3) the employer did not make a good faith effort to assist the employee in seeking accommodations; and (4) the employee could have been reasonably accommodated but for the employer's lack of good faith." Colwell v. Rite Aid Corp., 602 F.3d 495, 504 (3d Cir. 2010) (citing Williams, 380 F.3d at 761 (additional citations omitted).

Plaintiff does not address this issue in her brief in opposition to Defendant's summary judgment motion. As noted above, Plaintiff's supervisor, Sylvia Smith, testified that she was unaware of Plaintiff's cerebral palsy at the time Plaintiff was terminated. (Doc. 25, Ex. U, p. 14:23-25). Although the employer must participate

in the process in good faith, the employee bears the burden of informing the employer as to his or her disability and initiating the interactive process. Williams, *supra* at 772.  Moreover, Plaintiff has put forth no evidence of an accommodation that she requested and was denied.  Nor has she demonstrated a specific, reasonable accommodation that she contends would have allowed her to perform the essential functions of her job.  In addressing an employee's claim that an employer failed to engage in the interactive process, the Third Circuit has been clear that a "plaintiff in a disability discrimination case who claims that the defendant engaged in discrimination by failing to make a reasonable accommodation cannot recover without showing that a reasonable accommodation was possible." Donahue, 224 F.3d at 234.  No such showing has been made in this case.  Accordingly, Plaintiff has not established her claim that Defendant failed to accommodate her disability.

### B.  Hostile Work Environment[6]

---

[6] In her opposition brief, Plaintiff does not address the hostile work environment claim but focuses instead on disparate treatment, contending she was treated less favorably than other student interns.  However, she appears to advance this theory to rebut as pretextual the reasons cited by Defendant for her non-selection or failure to be retained.  Inasmuch as Defendant's argument under the McDonald Douglass framework is limited to the first inquiry, *to wit.*, whether Plaintiff has set forth a prima facie case of discrimination, and does not reach the burden-shifting stage requiring it to assert a legitimate, non-discriminatory reason

(continued...)

Courts in this Circuit have recognized a plaintiff's right to assert a hostile work environment claim under Title VII, the Rehabilitation Act and the ADEA. *See* Miller v. Cohen, 52 F. Supp.2d 389, 400 (M.D. Pa.1998) *aff'd*, 185 F.3d 862 (3rd Cir.1999); Aman v. Cort Furniture Rental Corp.*,* 85 F.3d 1074, 1081 (3d Cir.1996)*;* Fries v. Metro. Mgmt. Corp., 293 F. Supp.2d 498, 504 (E.D. Pa.2003) *aff'd* Glanzman v. Metro. Mgmt. Corp., 391 F.3d 506 (3d Cir.2004). "Hostile environment claims are different in kind from discrete acts. Their very nature involves repeated conduct." Nat'l R.R. Passenger Corp. v. Morgan, *supra* at 115. In order to state a claim for hostile work environment, a plaintiff must prove five elements: (1) that she is a qualified individual with a disability; (2) that she was subject to unwelcome harassment; (3) the harassment was based on her disability or a request for an accommodation; (4) the harassment was sufficiently severe or pervasive to alter the conditions of her employment and to create an abusive working environment; and (5) that her employer knew or should have known of the harassment and failed to take prompt effective remedial action. Griffin v.

---

[6](...continued)
for its actions, a discussion of pretext is premature. Moreover, to the extent that she has failed to establish the first element of a prima facie case, *i.e.* that she is disabled, she is unable to establish a prima facie case of disparate treatment inasmuch as that claim is premised upon her alleged disability. Analysis of the disparate treatment claim is, consequently, unnecessary.

Municipality of Kingston, Civ. A. No. 3:08-CV-2290, 2011 WL 718697, *

M.D. Pa. Feb. 22, 2011) (Caputo, J.); Walton v. Mental Health Ass'n of

Southeastern Pa., 168 F.3d 661, 667 (3d Cir.1999) (internal citations omitted).

"[H]arassment is pervasive when 'incidents of harassment occur either in concert

or with regularity.'" Andrews v. City of Philadelphia, 895 F.2d 1469, 1484 (3d

Cir. 1990) (quoting Lopez v. S.B. Thomas, Inc., 831 F.2d 1184, 1189 (2d

Cir.1987)).

To determine whether discrimination is sufficiently hostile to create

employer liability, a reviewing court must look at the totality of the circumstances,

including factors such as "the frequency of the discriminatory conduct; its

severity; whether it is physically threatening or humiliating, or a mere offensive

utterance; whether it unreasonably interferes with an employee's work

performance." Weston v. Pennsylvania, 251 F.3d 420, 426 (3d Cir.2001) (citing

Harris v. Forklift Sys., Inc., 510 U.S. 17, 23 (1993)). "[O]ffhanded comments and

isolated incidents (unless extremely serious) are not sufficient to sustain a hostile

work environment claim.  Rather, the conduct must be extreme to amount to a

change in the terms and conditions of employment." Mufti v. Aarsand & Co., Inc.,

667 F. Supp.2d 535, 545 (W.D. Pa.2009) (citing Abramson v. William Paterson

College of New Jersey, 260 F.3d 265 (3d Cir.2001)). Even conduct that is

unquestionably offensive and rude will not rise to the level required to make out a hostile work environment claim unless it is sufficiently severe.  *See* Saidu-Kamara v. Parkway Corp., 155 F. Supp.2d 436, 439-440 (E.D. Pa.2001) (finding that defendant's repeated making of suggestive sexual comments, patting plaintiff on the buttocks and breast, and making harassing comments about plaintiff's family background and poverty were not sufficient to state a claim for hostile work environment). Thus, the conduct must be objectively both severe and serious.

In her complaint, Plaintiff contends that she was subjected to a hostile work environment because of her disability.  While offering little in the way of direct allegations on this claim, she alleges that: she was questioned about her condition, in front of others, on one occasion; she was not assigned either a workspace or a permanent mentor or supervisor; and she was not provided with the necessary tools or resources to perform her expected duties.  (*See* Doc. 1).  Such claims fall short of establishing a hostile work environment.  Additionally, the brief in opposition to the summary judgment motion addresses this claim little, if at all, by asserting generally that she experienced severe and pervasive mistreatment and disregard as detailed in her "Time Line at Letterkenny." [7]  (Doc. 30-2, p. 68-71).

_____

[7]  This Exhibit is a 4 page journal created by Plaintiff that details her weekly her experiences at Letterkenny during her internship.  Although undated, Plaintiff
(continued...)

However, the Time Line contains neither evidence of severe or pervasive mistreatment nor threatening comments or conduct. The one occasion where Lonie Bender inquired about her condition, which, he claims, was to determine if she was able to walk the shop floor, may have been intrusive but cannot be classified as threatening or abusive. Nor, given the single occasion her condition was addressed, can it be deemed a frequent occurrence. Further, her recollections contained in the Time Line detail how she spent her time and with whom she interacted. There is no evidence of, and the court is at a loss to identify, conduct suggestive of abusive or intolerable working conditions.

Furthermore, Plaintiff cannot establish a prima facie case of a hostile work environment. As noted above, she has failed to establish that she is a "qualified individual with a disability." Moreover, even if she could demonstrate that she was subjected to unwelcome harassment and that such treatment was due to her condition, Plaintiff has put forth no evidence that her mistreatment was so severe or pervasive as to alter her working conditions or create an abusive working environment. At the end of her internship, she wrote an email to Sylvia Smith, indicating her positive experience working at Letterkenny and that everyone was

_____

[7](...continued)
stated that she created the memorandum, from memory and without notes, in late July, 2008 or early August, 2008.

"quite friendly and welcoming." (Doc. 24, Ex. R). This statement belies her claim of a hostile working environment.  Finally, Plaintiff has not demonstrated that the Defendant knew or should have known of any alleged harassment and failed to remedy.  Accordingly, there is not sufficient evidence to support a claim for a hostile working environment and summary judgment in favor of the Defendant is appropriate on this claim.

## V. Recommendation

Based on the foregoing, it is respectfully recommended that Defendant's motion for summary judgment (Doc. 24) be granted.

Date: March 18, 2011                          s/ William T. Prince
                                              William T. Prince
                                              United States Magistrate Judge